**EXHIBIT G**

*Powers v Bank of America, NA, No. 14-14335* (ED Mich, November 26, 2014), opinion and order granting equitable stay of redemption period.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARON POWERS AND MEGAN POWERS,

Plaintiffs,

Case Number 14-14335
Honorable David M. Lawson

v.

BANK OF AMERICA, N.A. and DOES 1-5,

Defendant.
_______________________________________/

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND FOR A PRELIMINARY INJUNCTION, AND GRANTING AN EQUITABLE STAY OF THE PLAINTIFFS' REDEMPTION PERIOD**

This case arises from the foreclosure of the mortgage on the home of the plaintiffs, Daron Powers and Megan Powers. The non-judicial foreclosure proceeding has progressed through the sale stage, and the redemption period is about to expire. The plaintiffs presently are representing themselves. They filed a complaint in state court, and Bank of America has removed it to this Court. Presently before the Court is the plaintiffs' emergency motion for a temporary restraining order and preliminary injunction to prevent an eviction authorized by a state court, which is imminent. This Court does not have the authority to interfere with the process of a state court in the present circumstances. However, the plaintiffs have raised serious questions about the validity of the foreclosure and the conduct of the Bank that warrants closer examination by this Court. In order to give this case the attention it deserves and retain the opportunity to provide the plaintiffs with meaningful relief, should it turn out that they are entitled to it, the Court will exercise its equitable prerogative and extend the redemption period while this lawsuit is pending.

I.

The Court had referred this case to Magistrate Judge Mona K. Majzoub for all pretrial matters. Judge Majzoub held a hearing on the plaintiffs' emergency motion, during which it became apparent that because of the magistrate judge's limited powers, coupled with the procedural rules, the timing of the proceedings, and the emergent nature of the remedies sought, the reference should be withdrawn and the Court should take up the motions itself.

According to the complaint and motion papers, the plaintiffs purchased a condominium located at 7054 Deerwood Trail #32, in West Bloomfield, Michigan in September 2005. They paid $380,000 for the condominium, making a $141,300 down payment. The plaintiffs obtained a $238,700 loan from the defendant for the balance of the purchase price, which was secured by a mortgage. The promissory note and mortgage required the plaintiffs to make monthly payments of $1,355.32 from November 1, 2005, through October 1, 2035. The plaintiffs were also required to make monthly escrow deposits in the amount of $530.69. The defendant has been the mortgagee and the loan servicer since the plaintiffs obtained the loan. According to the defendant, the Federal Home Loan Mortgage Corporation (Freddie Mac) was the loan "investor."

It is undisputed that from the inception of the loan through December 2009, the plaintiffs made timely payments, including several payments of $2,500 near the inception of their loan, which included additional principal payments of $613.99. Sometime in late 2009, however, the plaintiffs called the defendant to discuss a loan modification under the government's Home Affordable Modification Program (HAMP). On December 23, 2009, the defendant agreed to a three-month trial period during which the plaintiffs would make reduced payments on their loan in the amount of $1,316.85, including escrow payment, beginning February 1, 2010. Under the trial plan, the

plaintiffs would make the reduced payments while their application for the HAMP loan was reviewed. Although the plaintiffs were told that official approval could take three months (or sometimes longer), the frequently asked questions (FAQ) section of the trial program notice says that the defendant will "process your modification request as quickly as possible," but "[i]t may take up to 45 days . . . to review [the] documents once they are received." Importantly, however, the HAMP trial plan did not reduce the amount actually due each month under the plaintiffs' original mortgage; instead, the plaintiffs were told (again through the FAQ) that "[t]he difference between the amount of the trial payment and your normal monthly payment will be added to your loan balance." If the plaintiffs' application were approved, the defendant would waive any late fees and roll the past due balance into the plaintiffs' modified loan.

In February 2010, the plaintiffs began making modified loan payments under the trial modification agreement. The plaintiffs made those modified payment for three months, and then continued making them faithfully for an additional thirteen months, not having heard from the Bank about a decision on their modification request. The Bank accepted all those payments. At the November 20, 2014 hearing, plaintiff Daron Powers explained that although he was aware the trial modification documentation called for only three payments, he telephoned the Bank on a monthly basis and was told by various representatives that he should continue to make the modified payments because his application was still being reviewed. According to the plaintiffs, on or around June 2011, Daron Powers was informed that their loan had been removed from the trial modification program after nine months. The plaintiffs then resumed making the regular payments in the original amount.

The plaintiffs made four payments of $1,746.24, until September 2011, at which time the Bank stopped accepting payments. At the November 20, 2014 hearing, the defendant acknowledged that it is standard practice for it to stop accepting payments on an account once the Bank determines that the borrower is in default. Daron Powers noted that he received a statement or invoice from the defendant indicating that the plaintiffs owed several thousand dollars as a result of unpaid (or underpaid) loan payments. A review of the plaintiffs' account history shows that their 16 HAMP trial payments were being applied to their account based on their original loan payment amounts, which caused the plaintiffs to slowly accrue a large, unpaid balance on their loan. By September 2011, the plaintiffs' account was five months in arrears, at which time the defendant determined that the plaintiffs were in default under their loan agreement.

On April 25, 2012, nearly seven months after the plaintiffs' last payment was refused, the defendant sent the plaintiffs a letter indicating that their loan was not eligible for HAMP. *See* dkt. #1-2 at 22 (describing an unavailable exhibit, purportedly attached to an "Audit Report"). At the motion hearing, counsel for the defendant was unable to explain why it took over two years to officially deny the plaintiffs' HAMP application. The defendant Bank began foreclosure proceedings on April 19, 2012. The foreclosure sale was scheduled for May 22, 2012, and the defendant published the notice in the Oakland County Legal News on April 19, April 26, May 3, and May 10, 2012.

Sale of the property was adjourned for two years, until May 27, 2014, "while the parties considered loss mitigation options." According to Mr. Powers, it was during this time that he hired Eva Jo Sparks, his "Forensic Mortgage Loan Expert." Mr. Powers told the magistrate judge that after Ms. Sparks informed him that the plaintiffs were not in default and that scenarios such as the

one he faced were not uncommon for the defendant's customers, he decided to file a lawsuit against the Bank. The plaintiffs filed their first suit in December 2012 in the Oakland County, Michigan circuit court; the matter was removed to this Court on January 15, 2013. *Powers v. Bank of America, NA, et. al*, No. 13-10164. The case was dismissed without prejudice on the plaintiffs' motion when they indicated that the parties had "entered into a trial loan modification program, and no foreclosure action [was] pending."

The defendant and Mr. Powers both indicated that sometime in late spring or early summer 2013, the defendant offered the plaintiffs a modified home loan. No documentation has been provided regarding the alleged modification. The plaintiffs, however, rejected the offer for two reasons: (1) the Bank wanted them to admit that they were in default on the initial mortgage; and (2) the plaintiffs were uncomfortable signing a new loan agreement without knowing who actually owned the note. Mr. Powers was convinced that the plaintiffs had not defaulted on their loan, so he considered the issue of ownership to be "a minor issue," but he nevertheless agreed to acknowledge default and accept the loan offer if the owner of the note would sign an affidavit acknowledging ownership. The defendant declined the plaintiffs' request, so the negotiation fell apart.

Freddie Mac purchased the property at a sheriff's sale on May 27, 2014, and on October 2, 2014, Freddie Mac sold the property and conveyed its interest by quit claim deed to Richard and Louise Chambers. The deed was recorded on October 10, 2014. The plaintiffs' redemption period expires on November 27, 2014.

The plaintiffs filed a second complaint in the Oakland County, Michigan circuit court on October 17, 2014. Defendant Bank of America removed the matter to this Court. The plaintiffs filed their motions for a temporary restraining order and preliminary injunction on November 13,

2014, and the defendant responded that same day with a motion to dismiss. The Court referred this case to Magistrate Judge Mona K. Majzoub for general pretrial management. Magistrate Judge Majzoub held a hearing on this matter on November 20, 2014. The Court withdrew the reference earlier today. The plaintiffs' motions are ready for decision.

II.

Rule 65 of the Federal Rules of Civil Procedure authorizes the issuance of preliminary injunctions and temporary restraining orders. The Court may issue a temporary restraining order, sometimes without advance notice to a defendant, to preserve the status quo until it has had an opportunity to determine whether a preliminary injunction should issue. *See First Tech. Safety Sys, Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993). However, in this case, the defendant had notice of the plaintiffs' request for relief, and actually appeared at a hearing conducted by the magistrate judge. Therefore, there is no need to consider a temporary restraining order as an option here.

When considering whether to issue a preliminary injunction, the courts weigh these factors: (1) whether the movant has demonstrated a substantial likelihood of success on the merits; (2) whether the movant will suffer irreparable injury without the injunction; (3) would the preliminary injunction cause substantial harm to others; and (4) will the public interest be served if the injunction issues. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citation omitted). Although these factors are to be balanced, the failure to show a likelihood of success on the merits is generally fatal. *Ibid.*; *see also Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

A.

The defendant notes that, as a practical matter, an injunction against the defendant will not provide the plaintiffs with their desired remedy, because the plaintiffs seek only to prevent their eviction. The defendant is correct. The defendant does not own the property, and it is not trying to evict the plaintiffs itself. Richard and Louise Chambers currently own the property under the sheriff's deed. An injunction against the defendant will not stop an eviction action filed by the current owners of the property.

The defendant also points out that under the Anti-Injunction Act, 28 U.S.C. § 2283, a federal court "may not grant an injunction to stay proceedings in a State court," subject to certain exceptions that do not apply here. Courts in this district have repeatedly held that the Anti-Injunction Act bars injunctions preventing state-court eviction proceedings. *E3A v. Bank of America, N.A.*, No. 13-10277, 2013 WL 784339, *2 (E.D. Mich. Mar. 1, 2013); *Ross v. Wells Fargo Bank*, N.A., No. 13-11858, 2013 WL 5291671, *9 (E.D. Mich. Sept. 19, 2013). Although the Sixth Circuit has not addressed this issue specifically, other circuits have reached similar conclusions. *See*, *e.g.*, *Bond v. JPMorgan Chase Bank, N.A.*, 526 F. App'x 698 (7th Cir. 2013); *Watkins v. Ceasar*, 88 F. App'x 458 (2d Cir. 2004). The plaintiffs' request for injunctive relief is barred by the Anti-Injunction Act.

B.

The redemption period expires on November 27, 2014. The Court may determine whether to extend the plaintiffs' redemption period as a matter of equity. Michigan courts allow an "equitable extension" of the redemption period in a statutory foreclosure case because most lawsuits are not resolved before the end of the redemption period. *El-Seblani v. IndyMac Mortgage Services*, 510 F. App'x 425, 428 (6th Cir. 2013). "The standards for obtaining such an extension are

stringent." *Id.* at 429. In order to extend the redemption period, the plaintiff must make "'a clear showing of fraud, or irregularity.'" *Ibid.* (quoting *Schulthies v. Barron*, 16 Mich. App. 246, 167 N.W.2d 784, 785 (1969)); *see also Freeman v. Wozniak*, 241 Mich. App. 633, 617 N.W.2d 46, 49 (2000) ("[I]n the absence of fraud, accident or mistake, the possibility of injustice is not enough to tamper with the strict statutory requirements."); *Sweet Air Inv., Inc. v. Kenney*, 275 Mich. App. 492, 739 N.W.2d 656, 659 (2007) ("'[I]t would require a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside.'") (quoting *United States v. Garno*, 974 F. Supp. 628, 633 (E.D. Mich.1997)). Additionally, the "misconduct" that results in the fraud or irregularity "must relate to the foreclosure procedure itself." *El-Seblani*, 510 F. App'x at 429 (citing *Freeman*, 241 Mich. App. at 637, 617 N.W.2d at 49 ("Plaintiff cannot argue that there was fraud, accident, or mistake because plaintiff readily conceded that the foreclosure procedure was technically proper.")).

"[N]o caselaw has defined what constitutes an irregularity" sufficient to set aside a foreclosure. *PHH Mortgage Corp. v. O'Neal*, No. 311233, 2013 WL 3025566, at *5 (Mich. Ct. App. June 18, 2013). However, courts have held that "the simple existence of an irregularity is insufficient; it must rise to a particular level before a foreclosure sale will be set aside." *Ibid.* (citing *Garno*, 974 F. Supp. at 633).

The dictionary defines "irregularity" as "not being or acting in accord with laws, rules, or established custom." Webster's Collegiate Dictionary Tenth Edition, p. 619 (1997). Michigan cases offer other definitions. The Michigan Supreme Court has defined irregularity as a "proceeding that is taken without any foundation for it or that is essentially defective," *Jenness v. St. Clair Circuit Judge*, 42 Mich. 469, 471, 4 N.W. 220, 222 (1880); and elsewhere as the "want of adherence to

some prescribed rule or mode of proceeding," *Turrill v. Walker*, 4 Mich. 177, 183 (1856). Michigan's foreclosure by advertisement statute states that "[a] party may foreclose a mortgage by advertisement if . . . (a) [a] default in a condition of the mortgage has occurred, by which the power to sell became operative." Mich. Comp. Laws § 600.3204. A mortgagee establishes a clear showing of irregularity if a bank forecloses on a mortgagee that is not in default under the terms of the agreement or a subsequent modification.

The plaintiffs argue that an irregularity exists in the foreclosure here because they never defaulted on their mortgage. Compl., dkt. #1-2 at 8 ¶ 20. The defendant contends otherwise. The heart of the dispute is whether the plaintiffs' 16 monthly trial period payments satisfied their monthly mortgage obligations during the period that the defendants considered the plaintiffs for a loan modification. The plaintiffs never missed a payment; the Bank accepted each of the 16 payments while the plaintiffs waited for the Bank to decide whether to permanently modify the plaintiffs' loan. The plaintiffs testified to the magistrate judge that they contacted Bank of America on a monthly basis and were told to continue making the reduced payments while their application was under review. Around June 2011, the plaintiffs state that they were told over the phone that they were no longer being considered for a loan modification. At that point, the plaintiffs immediately resumed making regular payments as called for by the original mortgage. It was not until September 2011 that the Bank stopped accepting payments, accelerated the plaintiffs' loan obligations and, in 2014, foreclosed on the property.

The plaintiffs' complaint and supporting documents raise serious questions about whether they defaulted under the terms of the mortgage and trial payment plan. And their assertions also lead the Court to question whether the Bank's dealing with the plaintiffs were entirely above board.

Case 2:16-cv-14362-DML-MKM ECF No. 6, PageID.64 Filed 11/26/16 Page 10 of 11

The plaintiffs ask, if they were not in default at the beginning of the process, and they did everything the Bank asked of them, how could they have breached the terms of the mortgage? Could their predicament have resulted from inattention by a bank officer? Negligence? Mendacity? These are good questions that deserve sensible answers before the harsh remedies the Bank has invoked can be allowed to take their course.

The Bank says that even if an irregularity existed in the foreclosure, the plaintiffs cannot establish prejudice. It is true that "[t]o set aside the foreclosure sale, plaintiffs must show that they were prejudiced by defendant's failure to comply with [Michigan's foreclosure by advertisement statute]." *Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98, 115, 825 N.W.2d 329, 338 (2012). However, a showing of prejudice can be made if the plaintiffs can demonstrate "that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." *Ibid.* The plaintiffs can easily establish prejudice if they did not default on their loans but were made to endure foreclosure proceedings with the potential loss of their residence. The Court therefore will extend the redemption period during the pendency of this litigation.

III.

The plaintiffs, as previously noted, are proceeding *pro se*. This case appears to be straightforward; but despite appearances, foreclosure proceedings can be complex and confusing. Therefore, the Court will consider appointing *pro bono* counsel for the plaintiffs in accordance with the Court's plan. Of course, the plaintiffs may retain counsel of their own choice if they wish. It is not recommended that the plaintiffs proceed without a lawyer. If the plaintiffs cannot retain counsel, they should notify the Court immediately.

In the meantime, the Court finds that the tenets of equity favor extension of the redemption period. Dispossession is not appropriate during the period of redemption. *Massachusetts Mut. Life Ins. Co. v. Sutton*, 278 Mich. 457, 461, 270 N.W. 748, 749 (1936) (holding that "it has been the definite and continuous policy of this state to save to mortgagors the possession and benefits of the mortgaged premises, as against the mortgagees, until expiration of the period of redemption"); *Ruby & Associates, P.C. v. Shore Fin. Servs.*, 276 Mich. App. 110, 118, 741 N.W.2d 72, 78 (2007), *vacated in part on other grounds*, 480 Mich. 1107, 745 N.W.2d 752 (2008) (same; citations omitted).

Accordingly, it is **ORDERED** that the plaintiffs' motions for a temporary restraining order and for a preliminary injunction [dkt. #5] are **DENIED**.

It is further **ORDERED** that the redemption period in this matter is extended until further notice of this Court.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: November 26, 2014

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 26, 2014.

s/Susan Pinkowski
SUSAN PINKOWSKI